FILED

2005 Feb-08  AM 11:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **EDWARD L. HALL,** ] | |
| ] | |
| **PLAINTIFF,** ] | |
| ] | |
| **v.** ] | **Case No.  CV-02-TMP-0975-S** |
| ] | |
| **TALLADEGA COUNTY BOARD** ] | |
| **OF EDUCATION; EDDIE MCLAIN;** ] | |
| **RANDY HOWELL; JOHNNY PONDER;** ] | |
| **LARRY MORRIS; and JOE DUNCAN;** ] | |
| **individually and as members of the Talladega** ] | |
| **County Board of Education** ] | |
| ] | |
| **DEFENDANTS.** ] | |

## MEMORANDUM OF DECISION

This case comes before the Court on the Defendant's Objections to the Magistrate Judge's

Report and Recommendation of March 12, 2004.[1]  (Doc. 81) This Court adopts Magistrate Judge

Putnam's Report and Recommendation in part and rejects it in part.

### I.   Procedural History

Plaintiff Edward L. Hall commenced this action on April 19, 2002, by filing a complaint in

this Court alleging violations of the Equal Protection Clause of the Fourteenth Amendment to the

Constitution of the United States, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§§ 2000e et seq., the Civil Rights Act of 1866, as amended, U.S.C. §§ 1981 and 1981a, the Ku Klux

---

[1] The Plaintiff filed a motion for partial summary judgment.  However, the Plaintiff did not timely serve and file specific, written objections to the proposed findings and recommendations of the magistrate judge.  Accordingly, the Court finding no clear error on the face of the record adopts the magistrate judge's report and recommendation as it relates to the Plaintiff's motion for partial summary judgment.

1

Klan Act of 1871, 42 U.S.C. § 1985, and the Alabama Sunshine Law, Ala. Code § 13A-14-2. Plaintiff contends that Defendants' decision to restrict candidates for the superintendent vacancy filled on November 19, 2001, to persons currently employed in the Talladega County school system violated the Plaintiff's rights and constitutes racial and gender discrimination. The Plaintiff further alleges that as a result of Plaintiff's filing an EEOC charge and a lawsuit against the Defendants in 1996 alleging discrimination and testifying in support of his claims at the 1997 trial in the Middle District of Alabama, the Defendants subjected him to retaliation by refusing to consider him as a candidate and by refusing to appoint him as superintendent in November of 2001.

On May 29, 2003, the Plaintiff filed a motion for partial summary judgment only with respect to his (1) disparate impact claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., (2) retaliation claim under the First and Fourteenth Amendments of the Constitution of the United States, § 704 of Title VII, 42 U.S.C. §§ 1981, 1983 and 1985, and (3) Alabama Sunshine Law claim under Ala. Code § 13A-14-2. On the same day, the Defendants filed a motion for summary judgment asserting: (1) that Plaintiff does not have standing to assert discrimination and retaliation claims; (2) that even if Plaintiff can show that he has standing to assert discrimination and retaliation claims and can establish a prima facie case of discrimination and retaliation, the Plaintiff has failed to rebut the Defendants' articulated legitimate nondiscriminatory reasons for their hiring decision; (3) there is no evidence that a quorum of the Talladega County Board of Education (the "Board") met to discuss the selection of a superintendent in violation of the Alabama Sunshine Law; (4) there is no evidence of a conspiracy and the underlying claims are without merit; and (5) there is no evidence that the Board members acted outside their official capacities.

2

The parties declined to consent to the exercise of final jurisdiction by the magistrate judge pursuant to 28 U.S.C. § 636(c)  for all purposes, including determination of the Plaintiff's motion for partial summary judgment and the Defendants' motion for summary judgment.  Accordingly, on March 12, 2004, Magistrate Judge Putnam entered a report and recommendation concerning the disposition of both the motion for partial summary judgment filed by the Plaintiff and the motion for summary judgment filed by the Defendants.

## II.    Standards of Review

### A. Report and Recommendation

The Court makes a "de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made." Fed.R.Civ.P. 72(b); 28 U.S.C.A. § 636(b)(1); LR 72.1(b).  The Court "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Id.; see also United States v. Raddatz, 447 U.S. 667, 673-84, 100 S.Ct.  2406, 2411-16, 65 L.Ed.2d 424 (1980).

### B. Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of

3

material fact.  Celotex Corp., 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden

4

on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III.  Relevant Facts[2]

Edward L. Hall, the Plaintiff, became employed by the Talladega Board of Education in the late 1960's as a teacher.  (Plaintiff's Complaint at ¶ 11.)  He initially taught at a segregated, all black school.  In 1970, after the schools were desegregated, Hall was assigned to teach at a majority white

---

[2] Facts are undisputed unless otherwise expressly noted.

school.  He continued to teach until 1977, when he took an administrative job at the Board's central office.  (Defendant's Exhibit A, Resume of Edward L. Hall, Ph.D.)  Hall continued to work in the administrative offices, acting as principal for four months, and holding other administrative titles.[3] (Defendant's Exhibit A, Resume of Edward L. Hall, Ph.D.; Plaintiff's Complaint at ¶ 11.)  In 1986, Hall obtained his doctorate degree.  (Plaintiff's Complaint at ¶ 10.)   In 1988, he was appointed assistant superintendent for instruction, curriculum, and staff development.  (Plaintiff's Complaint at ¶ 11.)

In 1996, the Board's longtime superintendent, Dr. Lance Grissett, retired.  (Plaintiff's Complaint at ¶ 12.)  Hall applied to fill the vacant superintendent's position.  (Id.)  The Board conducted a broad search[4] in 1996 for a superintendent.  (Exhibit D, Defendant's Brief in support of summary judgment, Hall v. Alabama Ass'n of School Boards, 326 F.3d 1157 (11th Cir. 2003), Appendix, district court's opinion, p. 1901.)  Hall was selected as one of the six finalists. (Plaintiff's Complaint at ¶ 12.)   McLain testified that in the 1996 search,  he preferred a candidate that would

---

[3] The Defendants object to the magistrate judge's findings  that Hall worked in the administrative offices acting as principal for some periods, and that Hall held other administrative titles. (Rep. & Rec. p. 2.)  The objection is sustained as it relates to the time period that Hall served as interim principal of Talladega County Central High School.  The evidence establishes that Hall worked as interim principal of Talladega County Central High School for four months.

[4] The Defendants object to the magistrate judge's determination that it is not clear from the evidence whether the 1996 search was regional, statewide, or national in scope, but it is clear that applicants were sought from outside of the Talladega Board of Education, and that a preference existed for hiring an "outsider." (Rep. & Rec., p. 2, FN 1.)  The objection is sustained as it relates to the scope of the search.  The Defendants have provided evidence to establish that the Board enlisted the assistance of the Alabama Association of School Boards to aid its search. The record shows that the Alabama Association of School Boards placed advertisements and notices announcing the superintendent vacancy in regional and national professional publications.

have "fresh ideas" and "shake up" the system.[5]  (McLain Dep. 10/11/02, at 124.)  The Board voted to hire Dr. Peggy Connell, a white female, who was not a Board employee at the time of the search. (Plaintiff's Complaint at ¶ 13.)  Three Board members, McLain, Howell, and Ponder voted for Connell.  (Id.)  Two Board members, Morris and Duncan, voted for Hall.  (Id.)  Shortly after Connell became superintendent, Hall retired from the Talladega County school system and became the Chairman of the Department of Education at Talladega College.  (Plaintiff's Complaint at ¶ 16.) He presently serves as the Dean of the Division of Social Sciences and Education at Talladega College.  (Plaintiff's Brief in support of partial summary judgment at 6.)

In 1996, Hall filed a lawsuit in the United States District Court for the Middle District of Alabama against the Board, the Alabama Association of School Boards, and other defendants, alleging that he was denied the promotion to superintendent on the basis of race discrimination and seeking to be instated as superintendent.  (Plaintiff's Complaint at ¶ 15.)  After a non-jury trial, the trial court determined that the Board had not discriminated against Hall by selecting Connell, and that Hall had not demonstrated that he was more qualified than Connell.  The decision was affirmed by the Eleventh Circuit Court of Appeals.  See Hall v. Alabama Ass'n of School Boards, 326 F.3d 1157 (11th Cir. 2003).  As a result of that litigation, however, Hall obtained a statewide consent decree, by which the State Superintendent and the Alabama Association of School Boards agreed,

---

[5] The Defendants object to the magistrate judge's finding that McLain testified that the search in 1996 was conducted to find a candidate from outside the Talladega system who would have "fresh ideas" and "shake up" the system.  (Rep. & Rec. p. 3.) The objection is sustained in part and overruled in part because the Defendants have provided evidence that the Board considered both persons from outside the system as well as those inside the system such as Hall. Therefore, the 1996 superintendent search was not conducted only to find candidates outside of the Talladega system.  Although the search was not specifically conducted to find someone outside the Talladega system, the evidence establishes that McLain testified that he preferred someone that would have "fresh ideas" and "shake up" the system.

among other things, to fund a special program aimed at increasing the pool of persons qualified to serve as local superintendents and educating local school boards about the importance of ending the historical patten and practice of appointing only whites to be superintendent in majority white school systems.[6]  (Plaintiff's Complaint at ¶ 18.)

On or about November 16, 2001, while Hall's 1997 lawsuit was still pending, Connell announced that she was planning to retire from her post as the superintendent of Talladega County schools.  (Plaintiff's Complaint at ¶ 21.)  On November 19, 2001, the Board called a special session and met.  (Id. at 21.)  At that meeting, Board Chairman McLain stated that the Board could conduct a "national search, local search, or regional search."  (PX6 at Bates 24, Plaintiff's submission of evidence in support of motion for partial summary judgment.)  At that same meeting, however, the Board declined to conduct any type of search or to advertise the job vacancy, and instead restricted the pool of applicants to qualified individuals already working for the Talladega Board of Education.[7]  (Defendant's Brief at 1.)  Hall was not an employee of the Board in 2001.  (Hall Dep. 11/13/02, at 88.)   Board members concede that there were no black employees of the Talladega County Board of Education in November, 2001, considered by the Board to be qualified for the

---

[6] The Defendants object to the magistrate judge's determination that local school boards including the Talladega County Board of Education were parties to the consent decree.  The record establishes that Dr. Ed Richardson, the State Superintendent, in his official capacity and Dr. Sandra Sims De-Graffenried, Executive Director for Alabama Association of School Boards, in her official capacity were the statewide defendants and parties to the consent decree.  The objection is sustained.

[7] The Defendants state, in their brief in support of their motion for summary judgment, that  the Board "did not post the superintendent position, did not invite applications and did not engage in a public search."

superintendent's post.[8]  (PX6 at Bates 26, Plaintiff's submission of evidence in support of motion

for partial summary judgment; Elsberry Dep. 4/9/03, at 21-22; McLain Dep. 10/11/02, at 125-126.)

All seven employees considered qualified for the superintendent's post were white.  (Morris Dep.

9/16/02 at 117; Ponder Dep. 10/22/02, at 63-64.)

When they hired a new superintendent in 2001, each of the Board members was familiar with

Hall's 1997 lawsuit (and had apparently attended the trial and testified at trial and/or in deposition)

and knew that Hall wanted to be superintendent of the Talladega school system.[9]  (McLain Dep.

10/11/02, at 38-39; McLain Dep. 10/11/02, at 115-116, 127-128; McLain Dep. 4/9/03, at 43-45;

Morris Dep. 9/16/02, at 40-41; Howell Dep. 9/17/02, at 52-55; Howell Dep. 4/9/03, at 21; Ponder

Dep 4/9/03, at 27-36.)  At the same meeting in which the Board accepted Connell's resignation and

decided not to conduct a search, the Board voted unanimously to appoint Dr. Cindy Elsberry, a white

female, to replace Connell.  (Plaintiff's Complaint at ¶ 21; PX6, Plaintiff's submission of evidence

in support of motion for partial summary judgment.)

On December 7, 2001, the State Superintendent of Education, Dr. Ed. Richardson, wrote the

---

[8] The Defendants object to the magistrate judge's factual finding that the Board members concede that there were no black employees of the Talladega County Board of Education in November, 2001,  considered by the Board to be qualified for the superintendent's post.  (Rep. & Rec. p. 4.) The evidence,  including deposition testimony, establishes that there were no black employees of the Talladega County Board of Education in November,  2001, considered by the Board to be qualified for the superintendent's post.  The objection is overruled.

[9] The Defendants object to the magistrate judge's factual finding that, when they hired a new superintendent in 2001, each of the Board members was familiar with Hall's 1997 lawsuit (and had apparently attended the trial and testified at trial and/or in deposition), and knew that Hall wanted to be superintendent of the Talladega school system.  (Rep. & Rec. p. 4.) Through deposition testimony, the evidence establishes that when the Board hired a new superintendent in November of 2001, each of the Board members was familiar with Hall's 1997 lawsuit, and knew that Hall wanted to be superintendent of the Talladega school system.  The objection is overruled.

Talladega County Board of Education a letter in which he strongly suggested that the Board reopen the selection process and conduct an "inclusive search" for qualified candidates.  (PX7 at 1, Plaintiff's submission of evidence in support of motion for partial summary judgment.)  Richardson reminded the Board of the purpose of the consent decree and warned of further litigation.  (Id.)  After receiving Richardson's letter, the Board met in closed session with Board attorney, Charles Gaines, and sought advice about how to proceed.  (Appendix C, Plaintiff's submission of evidence in support of motion for partial summary judgment.)  A letter in response to the Richardson letter was drafted, and the Board determined that it would not reopen the selection process.  (PX8, Plaintiff's submission of evidence in support of motion for partial summary judgment; McLain Dep. 10/11/02, at 201-202.)  The fact that Richardson urged the Board to reopen the selection process was never revealed in any meeting open to the public, and neither the decision to reject Richardson's suggestion nor the letter written to Richardson in response was discussed in any Board meeting that was open to the public.[10]  (Plaintiff's Brief in support of motion for partial summary judgment at 22.)

In deposition testimony, various Board members stated that they would not work with Hall again because he filed the 1997 lawsuit against them.[11]  Specifically, Board member Howell testified

---

[10] The Defendants object to the magistrate judge's finding that the fact that Richardson had urged the Board to reopen the selection process was never revealed in any meeting open to the public, and that  neither the decision to reject Richardson's suggestion nor the letter written to Richardson in response was discussed in any Board meeting that was open to the public.  (Rep. & Rec.  pp.5-6.)  The fact that the Board's reason for not informing the public of Richardson's letter and of the letter drafted to him on behalf of the Board (that is, because they viewed Richardson's letter as posing a threat of litigation) is irrelevant.  The evidence establishes that Richardson's suggestion to reopen the selection of candidates, the Board's decision to reject Richardson's suggestion, and the letter written to Richardson in response were  never revealed in any meeting open to the public.  The objection is overruled.

[11] The Defendants object to the magistrate judge's factual finding that various Board members stated that they would not work with Hall again because he filed the 1997 lawsuit

that it would be "most difficult" for him to have a productive relationship with Hall because he was

"being sued for perpetuating vestiges of white supremacy in the state of Alabama."  (Howell Dep.

9/17/02, at 37-39.)  When asked if he could have a good working relationship with Hall, Howell

further stated that he "could not have that kind of a relationship" with Hall because of the things Hall

alleged in his 1997 lawsuit.  (Howell Dep. 9/17/02, at101-102.)   Howell went on to say he could

never vote for Hall for superintendent because of Hall's allegations of racial discrimination.  (Howell

Dep. 9/17/02, at 100.)  Ponder stated that, if Hall were superintendent, Ponder would not be able to

trust him and Hall would not trust the Board.  (Appendix B, Plaintiff's submission of evidence in

support of motion for partial summary judgment.)   McLain testified that, after hearing Hall's

testimony at the 1997 trial, his attitude toward Hall had changed, and he would find it "most

difficult" to have a working relationship with Hall, even though, before the lawsuit, McLain had a

good relationship with Hall and respected him.  (McLain Dep. 10/11/02, at 76-82.)  When McLain

was asked when he changed his position and decided he could not work with Hall, McLain stated:

"When he filed the lawsuit and the EEOC charge." (Plaintiff's submission of evidence in support

of motion for partial summary judgment.)

### IV.  Applicable Substantive Law and Analysis

### A.  Disparate Treatment

Plaintiff claims disparate treatment racial and gender discrimination and retaliation under the

Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (as enforced

through 42 U.S.C. A. § 1983),  42 U.S.C. § 1981 and Title VII, 42 U.S.C. 2000e.  Section 1983

---

against them.  The evidence establishes that the statements occurred in deposition testimony.
These statements constitute the actual testimony of three Board members, the existence of the
statements, and the actual states of mind of these members.  The objection is overruled.

provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983 (1996).[12]  Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a) (1994).[13]  The Court is aware that the summary judgment rule applies

in job discrimination cases just as in other cases.  See Chapman, 229 F.3d at 1025 (rejecting

an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side

of the scale).

The analysis of the plaintiff's claims will be determined not only by the nature of the

allegations but also by the quality of the evidence offered in support of those claims.  See

---

[12]The same framework used to analyze claims under Title VII is also employed in assessing claims of employment discrimination under § 1983.  See Richardson v. Leeds Police Dept., 71 F.3d 801, 805 (11th Cir. 1995).

[13]The same framework used to analyze claims under Title VII is also employed in assessing claims of employment discrimination under § 1981.  See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

Standard, 161 F.3d at 1330 (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen").  In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics.  See id.; see also Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence).  A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon.  See Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987).  Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption."  Burns v. Gadsden State Community College, 908 F.2d 1512 (11th Cir. 1990).  Cf. Wright v. Southland Corp., 187 F.3d 1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition).

Here, Plaintiff has presented only circumstantial evidence of racial and gender discrimination.  "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)."  Combs, 106 F.3d at 1527.  Under the McDonnell

Douglas and Burdine framework, the plaintiff first has the burden of establishing a prima

facie case of discrimination, which creates a rebuttable presumption that the employer acted

illegally.  See id. at 1527-28.  The methods of presenting a prima facie case, as well as the

exact elements of the case, are not fixed; rather they are flexible and depend to a large degree

upon the facts of the particular situation.   See, e.g., Nix v. WLCY Radio/Rahall

Communications, 738 F.2d 1181, 1185 (11th Cir. 1984); Lincoln v. Board of Regents of

Univ. Sys., 697 F.2d 928, 937 (11th Cir. 1983).  In general, a plaintiff establishes a prima

facie case of disparate treatment employment discrimination by showing that he or she was

a qualified member of a protected class and was subjected to an adverse employment action

but that otherwise similarly situated employees outside the plaintiff's class were treated

dissimilarly.[14]  See McDonnell Douglas, 411 U.S. at 802 (hiring); Holifield v. Reno, 115

F.3d 1555, 1562 (11th Cir. 1997) (discipline); see also Nix, 738 F.2d at 1185 (discipline);

Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1074 (5th Cir. 1981)

(wages).

    Once the plaintiff has shown a prima facie case and, thereby, has raised the

presumption of discrimination, the burden of production shifts to the employer to articulate

a legitimate, nondiscriminatory reason for its actions.[15]  See Combs, 106 F.3d at 1528.  The

employer "need not persuade the court that it was actually motivated by the proffered

---

[14]See also McDonnell Douglas, 411 U.S. at 802 n.13 (observing that "[t]he facts
necessary will vary in Title VII cases, and the specification above of the prima facie proof
required from respondent is not applicable in every respect in different factual situations").

[15]See Chapman, 229 F.3d at 1034 (stating that "[a] subjective reason is a legally
sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably
specific factual basis upon which it based its subjective opinion").

reasons." <u>Burdine</u>, 450 U.S. at 254-55; <u>see</u> <u>Chapman</u>, 229 F.3d at 1024.  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination drops out of the case and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[16]  Where the defendant articulates multiple  reasonable, legitimate, and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons.  <u>See</u> <u>Chapman</u>, 229 F.3d at 1024-25. Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case.  <u>See</u> <u>Combs</u>, 106 F.3d at 1528.

Despite this shifting of the burden of production between the Plaintiff and the defendant under the <u>McDonnell Douglas</u> and <u>Burdine</u> framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>Burdine</u>, 450 U.S. at 253.  Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgment motion either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of

---

[16]If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that reason is not sufficient.  <u>Chapman</u>, 229 F.3d at 1030.

illegal discrimination.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-49, 120 S. Ct. 2097, 2108-09 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion);[17] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and the post-Hicks case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993).

**1.  Race Discrimination:**

Defendants argue that they are entitled to summary judgment as to Plaintiff's disparate treatment race discrimination claim because the Plaintiff has failed to rebut the Defendants' articulated legitimate nondiscriminatory reasons for their hiring decision. Plaintiff claims that Defendants' failure and refusal to provide Plaintiff an opportunity to apply for or to be considered for the superintendent's vacancy in November of 2001 constitute disparate treatment race discrimination.  The Court finds that Plaintiff has established a prima facie case of disparate treatment race discrimination and presented

---

[17]The court in Chapman modified the statement in Combs contrary to this holding in Reeves after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law.  See Chapman, 229 F.3d at 1025, n.11.

sufficient evidence to allow this claim to proceed to a jury. The magistrate judge's recommendation is adopted and the Defendants' motion for summary judgment on the disparate treatment race discrimination claim is denied.

The facts presented in this case requires Plaintiff to present a prima facie case under Title VII by showing that (1) he was a member of a protected class; (2) he applied and was qualified for an open position; (3) he was rejected; and (4) the position remained open and the employer continued to seek applicants from persons not within the protected class with the plaintiff's qualifications. McDonnell Douglas, 411 U.S. at 802 (hiring); Hill v. Seaboard Coast Line Railroad Co., 885 F.2d 804, 808 (11th Cir. 1989). Plaintiff is a black male and a member of a protected class. It is undisputed that Plaintiff was qualified for the position of superintendent, and that he was excluded from the pool of applicants by the Board's 2001 policy of conducting only a search of persons already employed by the Board. Although applying for a job is normally a prerequisite to establishing a prima facie case of discriminatory hiring, the Eleventh Circuit has established that a plaintiff may make out a prima facie case of employment discrimination in cases where he can establish that the employer "had some reason or duty to consider him" for the vacancy. Carmicheal v. Birmingham Saw Works, 738 F.2d 1126, 1133-34 (11th Cir. 1984). The court further noted in that case that when the plaintiff has no notice of the vacancy, or has no opportunity to apply for the job, "such a reason for rejection is 'legally insufficient and illegitimate.'" Id. at 1134, quoting Harris v. Birmingham Board of Education, 712 F.2d 1377, 1383-84 (11th Cir. 1983). The Court finds that Plaintiff has satisfied the required element of applying for the superintendent's position. Plaintiff has also satisfied the remaining elements of the

prima facie case that, despite his qualifications, Plaintiff was not considered for the superintendent position and that after this rejection the position remained open and was filled by Dr. Elsberry, a white female, not within the protected class.

Once Plaintiff has established a prima facie case, the burden of production shifts to the Defendants to establish a legitimate nondiscriminatory reason for their decision. The Court finds that the Defendants have rebutted the initial inference of discrimination by articulating legitimate nondiscriminatory reasons for not considering the Plaintiff for the superintendent vacancy in November of 2001. The Defendants have proffered that the Board decided to consider only "insiders" for the superintendent position because of the expense and time of conducting a local, regional, and/or national search. Moreover, the Board also expressed its objective for maintaining continuity in the educational system by selecting a superintendent that was familiar with the goals and direction of the Talladega school system.

Since the Defendants offered legitimate nondiscriminatory reasons, to survive the Defendants' motion for summary judgment the Plaintiff must show that the Board's decision was a pretext for discrimination. McDonnell Douglas, 411 U.S. at 804. The Defendants allege that Plaintiff has not meet his evidentiary burden by producing evidence that the Board's proffered reasons were a pretext for race discrimination. The Court finds that Plaintiff has presented sufficient evidence of pretext and a genuine issue of material fact exists that requires the Defendants' motion for summary judgment to be denied and the claim to proceed to a jury. Plaintiff has presented evidence of sworn testimony that shows the Defendants had both actual and constructive knowledge of Plaintiff's pending lawsuit against the Board and his interest to be instated into the superintendent's position. In contrast to the

local, regional, and national search conducted by the Board in the 1996 superintendent search, the Plaintiff has also presented evidence that the Board sought legal advice on the legality of conducting an internal search versus an external search while Plaintiff's lawsuit was pending. Furthermore, Defendants knew that Plaintiff would have applied for the vacant position if an external search was conducted.

In addition, Plaintiff submitted evidence of a letter written by Dr. Richardson, the State Superintendent of Education of Alabama, to the Board expressing concern regarding the Board's selection process and failure to acknowledge the statewide consent decree. Dr. Richardson requested that the Board conduct a search that was open and inclusive to qualified candidates. Defendants assert that they were not obligated under Alabama law to conduct an open search for applicants. Although Section 16-8-7 of the Alabama Code invests the county board of education with the authority to appoint a superintendent, it is a general principle under Title VII jurisprudence that an employer cannot engage in a selection process with the intent to exclude a potential applicant on account of his race. Even though the Board has established legitimate nondiscriminatory reasons (cost-efficiency, less time-consuming, and continuity) for conducting an internal search for the November, 2001, superintendent vacancy, the Plaintiff has submitted enough evidence to raise an issue of genuine fact of whether the Defendants' proffered nondiscriminatory reasons were really a pretext for intentional discrimination and a strategy to exclude Plaintiff from the applicant pool on account of his race. The magistrate judge's recommendation is adopted and the Defendants' motion for summary judgment on the disparate treatment race discrimination claim is denied.

## 2.  <u>Gender Discrimination:</u>

The Defendants allege that Plaintiff has no evidence that the Board discriminated against him because of his gender.  The Defendants also object to the magistrate judge's determination that the gender discrimination claim asserted in Plaintiff's complaint is not relevant to Defendants' motion for summary judgment.  The Court finds that the gender discrimination claim is relevant and was raised in the Defendants' motion for summary judgment.  For the reasons stated below, the Court finds that the Defendants' motion for summary judgment on the gender discrimination claim should be granted and rejects the magistrate judge's recommendation that the gender discrimination claim is irrelevant to the Defendants' motion for summary judgment.

A plaintiff can establish a prima facie case of gender discrimination by showing: (1) that he is a member of a protected class; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that he was rejected despite his qualifications; and (4) that after this rejection the position remained open or was filled by a person not within the protected class. The burden-shifting framework outlined above for disparate treatment race discrimination claims also applies to gender discrimination claims.

Plaintiff is a black male and within the protected class.  As noted above, it is undisputed that Plaintiff was qualified for the position of superintendent, and that he was excluded from the pool of applicants by the Board's 2001 policy of conducting only a search of persons already employed by the Board.  Plaintiff has also satisfied the remaining elements of the prima facie case that, despite his qualifications, Plaintiff was not considered for the superintendent position and that after this rejection the position remained open and

was filled by Dr. Elsberry, a white female, who is not within the protected class. Even though Plaintiff has established a prima facie case of gender discrimination, the Defendants have offered legitimate nondiscriminatory reasons (cost-efficiency, less time-consuming, and continuity) for the Board's internal selection of a superintendent in November of 2001.

Once the Defendants offer legitimate nondiscriminatory reasons, Plaintiff is required to show by a preponderance of the evidence that the Defendants' legitimate reasons were not the reasons that actually motivated its conduct and that the reasons were merely pretext for gender discrimination. McDonnell Douglas, 411 U.S. at 804. Plaintiff has not satisfied his burden of production by presenting sufficient evidence that the Board's decision was a pretext for gender discrimination. The Plaintiff has asserted in his complaint that "the Defendants have refused to consider and to appoint Dr. Hall Superintendent because they perceive, however erroneously, that a female Superintendent will be easier for Board members to manipulate and will be more amenable to micro-management of school system affairs by members of the Board than will a male superintendent, Dr. Hall in particular." (Plaintiff's Complaint at ¶ 41.)  In contrast to Plaintiff's race discrimination claim, Plaintiff has not produced evidence to support his allegation of gender discrimination. It is established under Title VII law that a Plaintiff must produce evidence of pretext and "this evidence must be more than mere conclusory allegations and assertions and should be significantly probative that the proffered reason is pretext for discrimination." Pelli v. Stone Savannah River Pulp and Paper Corp., 818 F.Supp. 1559 (N.D.Ga 1995)(quoting Earley v. Champion Int'l. Corp., 907 F.2d 1077, 1081 (11th Cir. 1990); Carter v. City of Miami, 870 F.2d 578, 584 (11th Cir. 1989).  Plaintiff has asserted only an allegation of gender

discrimination and has not provided evidence to establish pretext.  The lack of sufficient evidence to establish pretext is a fatal failing in the Plaintiff's claim of gender discrimination. Accordingly, Defendants' motion for summary judgment is granted as to such claim.

### 3.  Retaliation:

Defendants asset that Plaintiff has no direct evidence of retaliation and has failed to show that the Board's legitimate reasons for hiring Dr. Elsberry were a pretext to retaliation. For the reasons noted below, the Defendants' motion for summary judgment is denied and the magistrate judge's recommendation is adopted.

Generally, to establish a prima facie case of retaliation a plaintiff must show:  (1) that he engaged in protected activity; (2) that his employer was aware of that activity; (3) that he suffered an adverse employment action; and (4) there was a causal link between his protected activity and the adverse employment action.  Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999) (citing Little v. United Techs., 103 F.3d 956, 959 (11th Cir. 1997)).  The causal link requirement is to be construed broadly, and the Eleventh Circuit Court of Appeals has stated that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated."  Id. at 1460, quoting EEOC v. Reichhold Chem., Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993).  The allocation of the evidentiary burdens will be determined by whether the evidence for establishing the retaliation claim is characterized as "direct" or "circumstantial" evidence.

In this case, the parties do not dispute that Plaintiff engaged in a protected activity

when he complained about discrimination by filing an EEOC charge and the 1997 lawsuit.[18]
There also is no dispute that the Board was aware of Plaintiff's pending actions in November
of 2001, when they declined to include him as an applicant for the superintendent's job.
Plaintiff can satisfy the third element of the prima facie case for retaliation by presenting
evidence that the Board's decision to restrict its search and prevent Plaintiff from applying
for the November of 2001 superintendent position was causally related or linked to his filing
an EEOC charge and 1997 lawsuit.

    A Title VII claim may be proven through the use of direct evidence or circumstantial
evidence.  Direct evidence, in the context of a Title VII claim, is defined as evidence which,
if true, "would require no inferential leap in order for a court to find discrimination."  See
Bass v. Board of County Commissioners, 256 F.3d 1095, 1111 (11th Cir. 2001).  This Court
has found "direct evidence where actions or statements of an employer reflect a
discriminatory or retaliatory attitude correlating to the discrimination or retaliation
complained of by the employee."  Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th
Cir. 1997).  That is, "direct evidence is composed of 'only the most blatant remarks, whose
intent could be nothing other than to discriminate' on the basis of some impermissible
factors."  Schoenfeld, 168 F.3d at 1266 (quoting Carter v. City of Miami, 870 F.2d 578, 582

_____

    [18] The filing of an EEOC charge is a classic "protected activity" and meets the first
requirement.  Moreover, it is well settled in the Eleventh Circuit that "[a] plaintiff engages in
'statutorily protected activity' when he or she protests an employer's conduct so long as she
demonstrates 'a good faith, reasonable belief' that the employer was engaged in unlawful
employment practices."  Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1388 (11th
Cir. 1998), cert. denied, 525 U.S. 1000, 119 S. Ct. 509, 142 L. Ed. 2d 422 (1998), quoting Little
v. United Technologies, Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997).

(11th Cir. 1989)).  Plaintiff has shown direct evidence, through the sworn testimony of three

of the five Board members,[19] that they would not hire Plaintiff as superintendent because of

the allegations he made in the EEOC charge and the lawsuit.  Specifically, Board member

Howell testified that it would be "most difficult" for him to have a productive relationship

with Plaintiff because he was "being sued for perpetuating vestiges of white supremacy in

the state of Alabama."  (Howell Dep. 9/17/02, at 37-39.)  When asked if he could have a

good working relationship with Plaintiff, Howell further stated that he "could not have that

kind of a relationship" with Plaintiff because of the things Plaintiff alleged in his 1997

lawsuit.  (Howell Dep. 9/17/02, at101-102.)  Howell went on to say he could never vote for

Plaintiff for superintendent because of Plaintiff's allegations of racial discrimination.

(Howell Dep. 9/17/02, at 100.)  Ponder stated that, if Plaintiff were superintendent, Ponder

would not be able to trust him and Plaintiff would not trust the Board.  (Appendix B,

Plaintiff's submission of evidence in support of motion for partial summary judgment.)

McLain testified that, after hearing Plaintiff's testimony at the 1997 trial, his attitude toward

Plaintiff had changed, and he would find it "most difficult" to have a working relationship

with Plaintiff, even though before the lawsuit McLain had a good relationship with Plaintiff

and respected him.  (McLain Dep. 10/11/02, at 76-82.)  When McLain was asked when he

changed his position and decided he could not work with Plaintiff, McLain stated: "When

he filed the lawsuit and the EEOC charge." (Plaintiff's submission of evidence in support of

---

[19] Plaintiff would have met his burden of showing direct evidence of retaliation even if
only one Board member had testified that he wouldn't hire Hall because of the 1997 lawsuit
because the Title VII analysis requires that "none of the participants in the employment decision-
making process" be influenced or motivated by racial bias.  Anderson v. WBMG-42, 253 F.3d
561, 566 (11th Cir. 2001), quoting Jones v. Gerwens, 874 F.2d 1534, 1542 n. 13 (11th Cir. 1989).

motion for partial summary judgment.)

The magistrate judge was correct in finding that even if the Defendants might argue that their statements are not *direct* evidence, but only circumstantial evidence of their motives for conducting the 2001 hiring process, the way in which the Defendants conducted the November of 2001 superintendent selection process demonstrates that they would *never* hire the plaintiff, regardless of the hiring process conducted. Furthermore, even if the Court found that the sworn testimony of the Board members was circumstantial evidence, the statements would establish pretext and create a genuine issue of fact to be submitted to a jury. Notwithstanding the characterization of the evidence, the sworn testimony of three Board members establishes their retaliatory animus, so that insofar as the plaintiff might seek the position under *any* hiring process, he would never succeed. Accordingly, the Plaintiff has succeeded in establishing a *prima facie* case of retaliation.

Once the Plaintiff can provide direct evidence of retaliation, then the employer must prove by a preponderance of the evidence that the Board would have made the same employment decision absent nonretaliatory reasons. Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed. 2d 268 (1989). The Defendants, however, have offered some evidence that the reasons they excluded Plaintiff from the search in 2001 were based on a desire to promptly and cost-effectively replace the superintendent and a business need for continuity. The Board's defense raises an issue of fact that must be determined by a jury; consequently, the motion for summary judgment on the retaliation claim is due to be denied. In this regard, however, because Plaintiff has met his burden of showing direct evidence of retaliation, the burden of disproving retaliation at trial will be on the Defendants. Bass v.

Board of County Commissioners, Orange County, Fla., 256 F.3d 1095, 1104 (11th Cir. 2001)("The defendant's burden when refuting direct evidence of discrimination is one of persuasion and not merely production."); Hill v. Metropolitan Atlanta Rapid Transit Auth., 841 F.2d 1533, 1539 (11th Cir. 1988).    The Court adopts the magistrate judge's recommendation and the Defendants' motion for summary judgment is denied as to the retaliation claim.

## B.  Disparate Impact

The Defendants object to the magistrate judge's determination (1) that the Court should treat the Plaintiff's Title VII claim as alleging claims of disparate treatment and disparate impact; (2) that Plaintiff has standing to assert a disparate treatment claim of discrimination; and (3) that Plaintiff provided sufficient evidence to prove his prima facie case of disparate impact discrimination.

A disparate-impact claim under Title VII may be proven by a plaintiff who points to a facially neutral practice or policy used by the employer which adversely and disproportionately impacts a protected group. See Edwards v. Wallace Community College, 49 F.3d 1517, 1520 (11th Cir. 1995).  It is not necessary for the plaintiff in a disparate-impact case to prove discriminatory intent or animus.  Id., citing Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S. Ct. 849, 854, 28 L. Ed. 2d 158 (1971).   To show disparate impact, a plaintiff must compare the racial composition of the groups at issue — in this case, the comparison is that of the pool of potential "outsider" applicants to the pool of "insider" applicants actually considered by the board.  There is no rule that the statistics be provided

26

by an expert, but only that the "statistical disparities" be "sufficiently substantial that they raise [] an inference of causation." Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 995, 108 S. Ct. 2777, 2789, 101 L. Ed. 2d 827, 845 (1988). Once a plaintiff has proved a *prima facie* case of disparate impact, the burden of production shifts to the defendant to show that the challenged employment practice serves a "legitimate, non-discriminatory business objective." Equal Employment Opportunity Commission v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1275 (11th Cir. 2000). Even when the defendants satisfy this burden, the plaintiff may still prevail if he demonstrates that "an alternative, non-discriminatory practice would have served the defendant's stated objective equally as well." Id.

Plaintiff has offered evidence that the Board decided in 2001 to search for a new superintendent and to consider only applicants from within the ranks of the Talladega school system. Plaintiff allege that the Board's method of hiring a superintendent in 2001 was racially discriminatory because it excluded him, a qualified black applicant, from consideration. It is not disputed that Plaintiff was qualified for the position of superintendent, and that he was excluded from the pool of applicants by the Board's 2001 policy of conducting only an internal search. The denial of an opportunity even to apply suffices as a legal injury sufficient to support standing.[20] The Plaintiff also has demonstrated, and Defendants concede, that there were no black applicants that the Board considered

---

[20] The Eleventh Circuit Court of Appeals has determined that a "failure to hire" constitutes an "adverse employment action" that may be the subject of a Title VII claim. Bass v. Board of County Commissioners of Orange County, 256 F.3d 1095, 1119 (11th Cir. 2001). It follows, then, that a refusal to even consider a qualified applicant for a position is sufficient to create an injury that may be made the basis of a discrimination case.

qualified within the school system.  The Plaintiff further has shown that at least one qualified black applicant, himself, existed in a pool that included "outside" applicants.  Although there is no expert testimony as to the statistics involved here, use of simple logic compels the conclusion that zero to one (or any higher number) is a statistic that supports Plaintiff's claim.  Without question, the 2001 hiring process completely excluded any possibility that a black applicant might be considered for the superintendent's post; thus, even if the process was facially neutral, it disproportionately impacted blacks more adversely than whites.  Plaintiff has provided sufficient evidence to prove his *prima facie* case of disparate impact discrimination.  Accordingly, there are genuine issues of fact sufficient to overcome the Defendants' motion for summary judgment as to the disparate impact claim.

Upon review of the record and Magistrate Judge Putnam's Report and Recommendation of March 12, 2004, the Court adopts the magistrate judge's recommendation and the Defendants' motion for summary judgment as to the disparate impact claim is denied.

### V.  Conclusion

For the reasons set forth above, the Court adopts Magistrate Judge Putnam's Report and Recommendation of March 12, 2004 except as rejected herein.  The magistrate judge's report and recommendation is hereby adopted in part and rejected in part.

**DONE** and **ORDERED** this 8th day of February, 2005.

**VIRGINIA EMERSON HOPKINS**
**United States District Judge**

28